UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STARNET INSURANCE COMPANY                         CIVIL ACTION

VERSUS                                            NO. 16-13511

LA MARINE SERVICE LLC AND                         SECTION "R" (3)
LEONARD JOURDAN, JR

# ORDER AND REASONS

Before the Court are plaintiff's motion for partial summary judgment[1] and plaintiff's motion for an extension of the dispositive motion deadline.[2] For the following reasons, the Court grants the motion for partial summary judgment and denies the motion for an extension of deadlines.

## I.     BACKGROUND

This case arises out of the sinking of Defendant LA Marine Service LLC's vessel, the M/V CAPT. LJ.[3] Defendant Leonard Jourdan, Jr. is the owner of LA Marine Service.[4] Plaintiff StarNet Insurance Company supplied

---

[1]  R. Doc. 30.
[2]  R. Doc. 57.
[3]  R. Doc. 1 at 2-3.
[4]  *Id.* at 3.

Hull and Machinery coverage to the defendants to cover losses or damages to the M/V CAPT. LJ for the policy period of September 24, 2015 to September 24, 2016.[5]

The M/V CAPT. LJ was afloat near Empire, Louisiana on April 7, 2016, when it capsized and sank during the night.[6] After being notified of the sinking, plaintiff approved a salvage plan on April 8, 2016.[7] The M/V CAPT. LJ was refloated, and Austin Glass of Rivers and Gulf Marine Surveyors conducted a survey of the vessel.[8] Glass's preliminary report found that the vessel was left unmanned overnight with the generator running, and concluded that the vessel sank after the generator failed.[9] The report further noted that the vessel's stuffing boxes were believed to be leaking, and a bilge pump was being used to keep water out of the vessel.[10] After the generator stopped running, the bilge pump lost power and water filled the engine room.[11]

On April 15, 2016, plaintiff issued a Reservation of Rights letter to LA Marine asserting that the insurance policy would not cover losses caused by

---

[5]    *Id.* at 3; R. Doc. 30-2 at 1-30.
[6]    R. Doc. 30-2 at 32-33.
[7]    *Id.* at 45.
[8]    *Id.* at 32-43.
[9]    *Id.* at 32-33.
[10]   *Id.* at 32.
[11]   *Id.* at 33.

a vessel owner, through bad faith or neglect, knowingly permitting the vessel to go to sea in an unseaworthy condition.[12] Plaintiff's letter further stated that, based on Glass's preliminary survey report, the sinking of the M/V CAPT. LJ may have resulted from a known leak that rendered the vessel unseaworthy.[13]

Plaintiff also requested information from LA Marine to assist in its investigation of the claim, including maintenance records, accident reports, and information about the leak and the operation of the generator and bilge pump.[14] In response, LA Marine stated that no major maintenance was performed on the M/V CAPT. LJ within the past year but that vessel parts, pumps, and other items were replaced as needed.[15] In June 2016, plaintiff took a sworn statement from Leonard Jourdan and written statements from two deckhands about the vessel's sinking.[16]

On July 28, 2016, a marine surveyor, Nicholas Paternostro, provided a survey report on the M/V CAPT. LJ.[17] Paternostro concluded that "the most probable cause of the vessel's sinking was the result of uncontrolled seawater

---

[12] R. Doc. 30-2 at 49-50.
[13] *Id.* at 51.
[14] *Id.* at 53.
[15] *Id.* at 55-57.
[16] *Id.* at 63-67 and 71-72.
[17] *Id.* at 75-98.

3

ingress into the vessel's engine room through the packing gland assemblies; however, it is not the result of a failure, but as a result of a lack of maintenance and normal wear and tear."[18] On July 29, 2016, plaintiff informed LA Marine Services that it would deny coverage related to the sinking of the M/V CAPT. LJ because the incident was caused by the unseaworthy condition of the vessel and a lack of proper maintenance.[19]

On August 2, 2016, plaintiff filed a complaint for a declaratory judgment that it does not owe insurance coverage for losses arising out of the sinking of the M/V CAPT. LJ.[20] Defendants filed an answer, affirmative defenses, and a counterclaim requesting declaratory judgment and damages arising out of plaintiff's failure to provide coverage.[21] Defendants further assert that they are entitled to compensation under the insurance contract's "Lay-Up Return Clause," which provides for payments for the time period that a vessel is out of commission.[22]

---

[18] R. Doc. 30-2 at 97.
[19] *Id.* at 99-103.
[20] R. Doc. 1.
[21] R. Doc. 13.
[22] *Id.* at 13-15. *See also* R. Doc. 30-2 at 13.

Plaintiff now moves for partial summary judgment to dismiss defendants' counterclaims for statutory penalties and "lay up" payments.[23] Plaintiff also moves for an extension of the dispositive motion deadline.[24]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at

---

[23] R. Doc. 30.
[24] R. Doc. 57.

1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the

pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (quoting *Celotex*, 477 U.S. at 322).

## III. DISCUSSION

### A. Partial Summary Judgment on Counterclaim

#### 1. Statutory Penalties

Under Louisiana Revised Statutes § 22:1892 and § 22:1973, an insurer may be liable for statutory penalties for failure to timely pay the amount of a claim when the failure to pay is "arbitrary, capricious, or without probable cause." La. R.S. 22:1892; La. R.S. 22:1973.[25] To recover statutory penalties, the insured "has the burden of proving that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) acted in an arbitrary and capricious manner." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th Cir. 2009). The Louisiana Supreme Court has

---

[25] These provisions were previously numbered La. R.S 22:658 and La. R.S. 22:1220, respectively. *See Oubre v. Louisiana Citizens Fair Plan,* 79 So. 3d 987, 990 n.1 (La. 2011).

7

explained that the "arbitrary or capricious" standard in both statutes requires "vexatious refusal to pay," and that these "statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed v. State Farm Mut. Auto Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003).

As the insured party, defendants bear the burden of proof on a claim for statutory penalties. *Dickerson*, 556 F.3d at 297. Defendants have not met their burden in this case. Plaintiff provided evidence that it promptly initiated an investigation into the sinking of the M/V CAPT. LJ. and denied the insurance claim only after receiving two survey reports that indicated the vessel may not have been seaworthy at the time of the sinking.[26] Defendants have not set forward any specific facts to challenge plaintiff's timeline or the content of the two survey reports.[27]

Defendants instead make several legal arguments that plaintiff acted arbitrarily and capriciously. Defendants first contend that plaintiff lacked a reasonable basis to deny coverage when it issued its April 15, 2016, Reservation of Rights letter.[28] But this letter was not a final denial of

---

[26] R. Doc. 30-2 at 32-103.
[27] Defendants attach both the Glass and Paternostro reports to their memorandum in opposition. *See* R. Doc. 36-1 at 50-61; 90-113.
[28] R. Doc. 36 at 1.

8

coverage.[29] *See Mosadegh v. State Farm Fire and Cas. Co.*, 330 F. App'x 65 (5th Cir. 2009) (finding that a reservation of rights letter is not a denial of coverage). The letter instead informed LA Marine that the loss of the M/V CAPT. LJ *may* not be covered and that plaintiff would be requesting additional information to investigate the claim.[30] This represented the beginning of plaintiff's investigation, and is therefore not evidence of an arbitrary or capricious failure to pay.

Defendants further argue that plaintiff lacked a reasonable basis to deny coverage because seaworthiness was admitted in the insurance contract and plaintiff failed to diligently inspect the vessel before issuing insurance.[31] This argument is meritless. The insurance contract includes a "Seaworthiness Admitted Clause," which states that "[t]he seaworthiness of the vessels insured hereunder as between the Assured and the Assurer is hereby admitted."[32] Defendants cite no authority for the proposition that admitting the seaworthiness of a vessel at the time of issuance of insurance precludes a defense that the vessel later became unseaworthy.

---

[29] R. Doc. 30-2 at 49-52.
[30] *Id.*
[31] R. Doc. 36 at 2, 6.
[32] R. Doc. 30-2 at 14.

Further, defendants' interpretation of the insurance contract is contrary to established law. The Fifth Circuit has explained that "federal maritime law implies two warranties of seaworthiness in a time hull insurance policy," an absolute warranty of seaworthiness at the inception of the policy and "a modified, negative warranty, under which the insured promises not to knowingly send a vessel to sea in an unseaworthy condition." *Employers Ins. of Wausau v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1431-32 (5th Cir. 1992). The "American Rule" provides that, if a vessel owner permits the "vessel to break ground in an unseaworthy condition," the insurer may deny coverage for "loss or damage caused proximately by such unseaworthiness." *Saskatchewan Government Insurance Office v. Spot Pack, Inc.*, 242 F.2d 385, 388 (5th Cir. 1957).

The "Seaworthiness Admitted Clause" of the contract is relevant to the absolute warranty of seaworthiness at the inception of the insurance policy, but there is no basis to believe that this provision waived the defendants' continuing obligation not to send the vessel to sea in an unseaworthy condition. The insurance contract includes a separate "Liner Negligence Clause," which explicitly excludes from coverage loss or damage that has "resulted from want of due diligence by the Assured(s), the Owner(s) or

Manager(s) of the Vessel, or any of them."[33] This provision indicates that the contract preserved the plaintiff's right under the "American Rule" to deny coverage for losses that resulted from defendants' negligence. At a minimum, plaintiff had reasonable grounds to believe that it could defend against a claim on this basis. *See Reed*, 857 So. 2d at 1021.

There is also no merit to defendants' argument that plaintiff should have inspected the vessel before issuing coverage. Under the implied absolute warranty of seaworthiness, the insured bears the risk of loss if the vessel is not seaworthy at the time of the contract. *See Employers Ins. of Wausau*, 978 F.2d at 1433 (explaining that the insured is "best able to have the vessel adequately prepared for th[e] voyage" and the warranty "place[s] the risk of loss on the cheapest cost avoider"). Plaintiff therefore did not have a general duty to ensure the seaworthiness of the vessel before issuing coverage, and defendants do not point to any contractual provision that would create such a duty.

Finally, defendants contend that plaintiff has not presented evidence that defendants failed to exercise due diligence.[34] But the subject of this summary judgment motion is whether plaintiff had a reasonable basis to

---

[33] R. Doc. 30-2 at 18-19.
[34] R. Doc. 36 at 4.

deny coverage, not whether plaintiff will ultimately prevail on the merits of its declaratory judgment claim. Defendants bear the burden of showing that plaintiff is liable for statutory penalties, and they have failed to present any evidence indicating that plaintiff's failure to pay was arbitrary, capricious, or without probable cause.

### 2. Lay Up Damages

Defendants also request compensation under the "Lay Up Return Clause" of the insurance contract.[35] This provision provides for insurance payments when a vessel "is laid up and out of commission and *not under repairs* for which the Underwriters may be liable" (emphasis added).[36] Defendants represent that the M/V CAPT. LJ is being stored at Shipyard Services in Venice, Louisiana.[37] Plaintiff argues that defendants are not entitled to lay up damages because the vessel is in line for repairs.[38]

Although defendants contend that the M/V CAPT. LJ is not under repair,[39] they do not provide an alternative explanation for why the vessel is out of commission. Defendants instead acknowledge that "the only reason the repairs have not been initiated is that StarNet has not paid for covered

---

35 R. Doc. 13 at 13-15.
36 R. Doc. 30-2 at 13.
37 R. Doc. 36 at 7; R. Doc. 36-1 at 114.
38 R. Doc. 30-1 at 13.
39 R. Doc. 36 at 2.

12

damages."[40] Plaintiff is seeking a declaratory judgment that it is not liable for damage to the vessel, but it is undisputed that plaintiff *may* be liable for repairs if it does not prevail in this action.

If defendants had paid for the repairs themselves, placed the vessel back into commission, and later sought reimbursement from plaintiff for the cost of the repairs, plaintiff would not be liable for lay up damages under the contract. Defendants have the burden of proof on their counterclaim, and have failed to present any facts or legal authority to support an entitlement to lay up damages where a vessel is laid up for an extended period of time only because of a failure to pay for repairs. Plaintiff is entitled summary judgment on defendants' claim for lay up damages.

### B. Extension of Dispositive Motion Deadline

The deadline for the submission of dispositive motions in this matter was May 10, 2017, requiring a filing date of April 25, 2017.[41] On June 2, 2017, the Court continued the trial date but did not reset the motions deadline.[42] Trial is scheduled to begin November 13, 2017.[43] Plaintiff now moves to

---

[40] *Id.*
[41] R. Doc. 16. *See also* Local Rule 7.2.
[42] R. Doc. 47.
[43] R. Doc. 58.

extend the dispositive motion deadline because it wishes to file a motion for summary judgment.[44] Defendants oppose an extension of the deadline.[45]

Federal Rule of Civil Procedure 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enterprises, L.L.C. v. SouthTrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003) (internal citation omitted). In making scheduling decisions, the Court's "judgment range is exceedingly wide," for it "must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's." *HC Gun & Knife Shows, Inc. v. City of Houston,* 201 F.3d 544, 549-50 (5th Cir. 2000); *see also Versai Management Corp. v. Clarendon America Ins. Co.*, 597 F.3d 729, 740 (5th Cir. 2010).

Plaintiff asserts that it has good cause for an extension because it chose not to file a motion for summary judgment in reliance on defendants' representation that their expert's report and testimony would create a potential issue of fact.[46] In response, defendants argue that plaintiff had

---

[44] R. Doc. 57.
[45] R. Doc. 59.
[46] R. Doc. 57-1 at 6.

14

ample time to depose the expert, Andrew Minster, before the Court's deadline.[47] Defendants further contend that they will be prejudiced if plaintiff is given another opportunity to move for summary judgment.[48]

The Court finds that plaintiff has failed to show that the original dispositive motion deadline could not reasonably be met despite due diligence. Defendants' counsel produced their Rule 26 expert disclosures by email on March 21, 2017, identifying Andrew Minster and Austin Glass as defense experts.[49] The following day, defendants' counsel informed plaintiffs' counsel that Minster and Glass were available for deposition April 13, April 14, April 21, and April 24.[50] Based on the email records before the Court, plaintiff's counsel did not respond until April 10, 2017, and asked to schedule Glass's deposition for April 24.[51] Plaintiff states that it did not depose Minster at this time because only Glass had issued an expert report.[52]

Plaintiff represents that, after Glass's deposition, defendants' counsel informed plaintiff's counsel that defendants intended to rely on the expert opinion of Minster and that Minster would issue a supplemental report.[53]

---

[47] R. Doc. 59 at 2-3.
[48] *Id.* at 1.
[49] R. Doc. 59-1 at 1.
[50] *Id.* at 3.
[51] *Id.* at 4-6.
[52] *Id.*
[53] R. Doc. 57-1 at 3-4.

This conversation purportedly occurred on April 24, 2017, the day before the deadline to file dispositive motions.[54] Minster did not submit an expert report, and he testified in his May 30, 2017, deposition that he was not asked to issue any additional reports.[55]

The Court is not persuaded that defendants' purported representations regarding Minster's expert testimony prevented plaintiff from meeting the dispositive motion deadline. Plaintiff was on notice as of March 21, 2017, that defendants planned to use Minster as an expert but did not attempt to depose him before the dispositive motion filing deadline.[56] Although plaintiff submits email correspondence demonstrating its efforts to schedule Minster's deposition and ascertain whether he would submit an expert report, all this correspondence took place after the filing deadline.[57] Moreover, the deadline for the defendants to submit expert reports in this matter was April 10, 2017.[58] Plaintiff was free to submit a dispositive motion by the Court's deadline and then challenge any possible new report by Minster as untimely.

---

[54] *Id.* at 3.
[55] R. Doc. 57-2 at 24.
[56] Plaintiff also had the option to depose Austin Glass earlier in April, but chose to schedule his deposition for the day before the dispositive motion filing deadline.
[57] *Id.* at 7-14.
[58] R. Doc. 16

Given the absence of good cause for an extension, the Court will not reset the dispositive motion deadline.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is GRANTED. Defendants' claims for statutory penalties and lay up damages are DISMISSED. Plaintiff's motion for an extension of deadlines is DENIED.

New Orleans, Louisiana, this __14th__ day of August, 2017

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE